## CHARLES GRIEB v. WILLIAM B. COMSTOCK.

*Statute of frauds—Promise to pay the debt of another—Novation —Evidence.*

1. Where under an arrangement between the heirs of a deceased mother, who held a chattel mortgage on the stock of goods of one of her sons as security for her indorsements of his notes, which are held by another son, who has been appointed special administrator of her estate, the goods are turned over to the administrator, and the mortgagor assumes the care of his aged father, and the administrator agrees with the owner of the store in which the business was being carried on to pay the balance due for rent, the arrangement amounts to more than a mere concession or surrender by a mortgagor to a mortgagee, and an action will lie upon the agreement to pay the rent.

2. The plaintiff may testify to statements made to him by the mortgagor relative to the family understanding, which were

afterwards confirmed in detail by the defendant in a conversation with the plaintiff, such testimony being competent as tending to show the release of the original debtor from liability for the rent.

3. An objection to testimony of the contents of a paper in the absence of proper notice for its production is waived by the concession of counsel for the objecting party, under which further testimony of the same character is introduced without objection.

Error to St. Clair. (Vance, J.) Submitted on briefs March 8, 1894. Decided March 27, 1894.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Hovey & Muir,* for appellant.

*Chadwick & McIlwain,* for plaintiff.

McGRATH, C. J. Alfred M. Comstock occupied a store in Port Huron owned by plaintiff, and was indebted for rent thereof in the sum of $500. He had given a mortgage on his stock, of $3,000, to his mother, to secure her upon her indorsements of notes held by defendant. The mother died May 18, 1890. On June 9, 1890, defendant, a son of deceased, who resided at Alpena, was appointed special administrator of his mother's estate. Immediately upon his appointment, he took possession of the store and stock of Alfred M., and sold out at private sale the entire stock. Plaintiff insists that, before defendant took possession of the stock, there was a family arrangement, by the terms of which defendant was to take possession and charge of the store business and stock, close out the stock, and pay plaintiff's debt, and Alfred M. was to go back upon the farm and take care of the father, who was then very old; that before defendant took possession he told plaintiff of this arrangement; that, in pursuance of this family understanding, defendant went into possession;

that, pending the disposition of the stock, plaintiff observed that the goods were being removed from the store in truck loads, and called at the store, and, in the presence of defendant and Alfred M., threatened to attach the stock unless some definite arrangement was made with reference to his claim; that thereupon defendant agreed that, if plaintiff would allow him to go on and close out the stock, he (defendant) would pay the debt in cash, if he realized sufficient cash from such sale,—otherwise, if plaintiff would make out a statement, and have Alfred M. O. K. it, and send it to defendant, he would send him a check for it; that thereupon plaintiff desisted; that such statement was afterwards made out, and mailed to defendant; and that plaintiff thereafter looked to defendant, only, for his debt.

The court instructed the jury that—

"If, when William B. Comstock came to Port Huron and took possession of the stock, he did so as special administrator of the estate of his mother, Harriet J. Comstock, to foreclose a chattel mortgage which Harriet, his mother, held against Alfred, and by virtue of that mortgage he took possession, and while here in possession, as special·administrator of his mother's estate, he made the promise to pay this debt, then I say to you the plaintiff cannot recover, because, as special administrator, William B. Comstock could make no such agreement that would bind the estate of Harriet J. Comstock, and under such circumstances the evidence would not show such a consideration passing to him, individually, as would make such a promise valid as an individual promise on his own account. Our statute provides that any promise to pay the debt of another person must be in writing, to bind the person making it. If the only thing that had occurred was a promise of William B. Comstock to Grieb to pay him Alfred's debt, and ended there, then the plaintiff could not recover, on account of the statute."

But the court submitted the case to the jury upon the plaintiff's claim that there was a novation by the substitu-

tion of defendant as plaintiff's debtor in the place of Alfred M., and charged the jury as follows:

"If you find that about the time Harriet J. Comstock died, in about May, 1890, Alfred M. and William B. Comstock, and all her other heirs, met there, at her home, and while there agreed that Alfred's business should be closed out at Port Huron, and he should go on the farm and take care of his aged father, and that it was then understood and known by the heirs that his mother held a chattel mortgage on Alfred's stock, and that Alfred owed Grieb, this plaintiff, and that they then understood and agreed that, in closing out Alfred's business, Grieb's debt would have to be paid; and if you further find that, in pursuance of that agreement, Alfred informed Grieb of their understanding, and shortly afterwards William B. Comstock, this defendant, came to Port Huron and took possession of the stock, and while here, in the presence of Alfred and Grieb, agreed and promised to pay Grieb what Alfred owed him, if he realized it out of the stock, in cash, and, if not, he would send it to Grieb when he got home, and that it was then and there understood that Alfred was to be released, and Grieb did in fact release Alfred, and afterwards looked to the defendant, William B. Comstock, solely, for payment,—then I say to you that that state of facts would be sufficient to make the arrangement a novation or substitution of debtors, and the plaintiff would be entitled to recover; and, unless you find that some such state of facts did exist, you must find for the defendant. On no other theory can the plaintiff recover."

The defendant insists that there was no evidence of an agreement that Alfred M. should be released, or the original debt extinguished. We are not prepared to say that, upon this record, there was no evidence from which the inference of such an intent could be drawn.

The family arrangement, however, amounted to more than a mere concession or surrender by a mortgagor to a mortgagee. Alfred M. had a stock of goods, and was doing business. Defendant was personally interested. The former not only turned over his stock and gave up his business, but assumed a charge in which defendant was

directly interested. In other words, a part of the consideration passed directly from the original debtor to defendant.

It is urged that the testimony of plaintiff as to the statements made by Alfred M. to plaintiff relative to the family understanding was improperly received; but the testimony was competent as tending to show the release of Alfred M., and plaintiff testifies that in the conversation had with defendant· after he came to Port Huron, and was about to take possession, defendant confirmed, in detail, the statements alleged to have been made by Alfred M.

Exception was taken to the admission of testimony as to the contents of the O. K.'d bill sent to defendant, in the absence of proper notice to produce; but, upon a concession afterwards made by defendant's counsel, further testimony of the same character was introduced without objection, and the prior objection must be deemed to have been waived.

The judgment is therefore affirmed.

The other Justices concurred.